UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| LARRY O. WHITE JR., | : Case No. 1:24-cv-270 |
| Plaintiff, | : |
| vs. | : Judge Matthew W. McFarland |
| | : Magistrate Judge Peter B. Silvain, Jr. |
| ODRC DIRECTOR, *et al.*, | : |
| Defendants. | : |

**REPORT AND RECOMMENDATION**[1]

This case is before the Court upon Plaintiff's Motion for Injunctive Relief (Doc. #30), Defendants' Response (Doc. #33), and Plaintiff's Reply[2] (Doc. #36).

**I.   BACKGROUND & PLAINTIFF'S MOTION**

In July 2024, Plaintiff, an inmate housed at the Lebanon Correctional Institute ("LECI"), filed a *pro se* Amended Complaint against eleven Ohio Department of Rehabilitation and Correction ("ODRC"), LECI, and/or Aramark Defendants.[3] (Doc. #6). Upon initial review of the Amended Complaint, the undersigned found that Plaintiff could proceed with his claims under the Religious Land Use and Incarcerated Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq.*,

---

[1] Attached is a NOTICE to the parties regarding objections to the Report and Recommendation.

[2] Although he labels his filing as "Plaintiff's objection to Defendants' Response to Plaintiff's Motion For Injunctive Relief," the undersigned understands this document to be Plaintiff's Reply.

[3] Plaintiff names the following eleven Defendants: ODRC Director Annette Chambers-Smith ("ODRC Director"); LECI Warden Doug Luneke ("Warden"); LECI Warden's Administrative Assistant Ms. Myers ("Myers"); LECI Deputy Warden Stanley ("Stanley"); LECI Deputy Warden Hogan ("Hogan"); LECI Chaplain R. Smith ("Smith"); LECI Chaplain T. Palmer ("Palmer"); LECI Institutional Inspector ("Inspector"); LECI Mental Health Dr. A ("Dr. A"); LECI F-Block Unit Manager Johnson ("Johnson"); and LECI Director of Aramark ("Aramark Director"). (Am. Compl., Doc. 6, PageID 90).

against Defendants Stanley, Smith, Palmer, Inspector, and Aramark Director, in their individual and official capacities, to the extent he seeks injunctive relief; and with his Equal Protection claims against Defendants Stanley, Smith, Palmer, and Inspector, in their individual capacities for damages and injunctive relief, and in their official capacities for injunctive relief. (Doc. #10). The undersigned recommended that all of Plaintiff's remaining claims be dismissed, and United States District Judge Matthew W. McFarland subsequently adopted the Report and Recommendations. (Doc. #s 10, 18).

In Plaintiff's Motion for Injunctive Relief, he requests that the Court order his transfer from LECI/ODRC to a federal holding facility to complete his prison sentence. (Doc. #20, *PageID* #211). Plaintiff alleges that on July 11, 2025, another inmate "advised [him] that he believed that his boss had put a hit on [Plaintiff]." *Id.* The inmate would not tell Plaintiff his boss' name or his own name or inmate number. *Id.* However, Plaintiff indicates that the inmate "works directly for the Le.C.I. Chaplin's Department." *Id.* After hearing this "disturbing news," Plaintiff refused his housing assignment and placed himself in LECI's "make-shift Protective Custody Block." *Id.* at 211-12. According to Plaintiff, employees at LECI refer to such action by an inmate as "Checking In." *Id.* at 212. Plaintiff asserts that "Check-In" is a "[derogatory] word created by Le.C.I./ODRC employees in order to make inmates feel less than human." *Id.*

Shortly after Plaintiff moved to the "make-shift Protective Custody Block," another inmate, Gibson—"a large[,] strange acting white man"—was placed in his cell. *Id.* Plaintiff indicates that this move put him on "high alert" because he alleges LECI is segregated by race. *Id.*

According to Plaintiff, on July 13, 2025, while Gibson was out of the cell, he completed his morning prayers and began to study the Quran. *Id.* at 213. When Gibson returned to the cell, he became agitated and ranted about the Quran. *Id.* Plaintiff and Gibson argued, and Gibson

2

pulled out a large piece of metal. *Id.* Plaintiff alleges that Gibson attacked him, and he defended himself, neutralizing Gibson in three to five seconds. *Id.* at 214. When Plaintiff noticed that Gibson was injured, Plaintiff wrapped his head and advised Gibson to get help. *Id.* When the responding officer opened the cell, both Gibson and Plaintiff were sent to the hospital. *Id.*

Plaintiff alleges that while in the hospital, the two officers overseeing Gibson told Plaintiff that Gibson was "being difficult and uncooperative" and they found several weapons, including "a long rusty piece of metal longer than 8 inches …." *Id.* Plaintiff contends that while he has never used a weapon, "weapons are popping out of Inmate Gibson like he is a Pez dispenser." *Id.* at 215.

In addition to Plaintiff's altercation with Gibson, Plaintiff alleges he has encountered several other difficulties with officers at LECI. With regard to his property, Plaintiff indicates that when he refused to lock (on July 11, 2025), the officer never inventoried his belongings, stole a "box of debbies," and later told Plaintiff that he gave his stuff away. *Id.* at 215. Additionally, the cell where he was attacked was not secured, and Plaintiff fears that his property is either lost or stolen. *Id.*

Plaintiff alleges that he was left in the same bloody clothes that he was wearing when he was attacked and was denied a shower after returning from the hospital. *Id.* at 216. Additionally, after the attack, Plaintiff states that LECI officers have called him derogatory names and accused him of stabbing someone. *Id.* at 215-16.

Unrelatedly, Plaintiff asserts that the LECI mail room is contempt of court for failing to treat mail from the Court as legal mail. *Id.* According to Plaintiff, he has only received two pieces of mail from the Court regarding this case. *Id.* at 216.

Finally, Plaintiff alleges that he was denied the ability to observe the Holy Month of Ramadan in 2024 and lost eighty pounds because he was not given blessed food to break his fast.

*Id.* at 216. Plaintiff explains that, as a result of recent events, he is afraid to eat food provided by Aramark because he cannot see his tray being served. *Id.* However, because Plaintiff cannot lose eighty more pounds, he is "forced to eat food that at the least [he is] convinced someone has spit in." *Id.*

Defendants oppose Plaintiff's Motion, asserting that Plaintiff failed to demonstrate—or present any factual evidence—that he has a strong or substantial likelihood of success on the merits of his claims. (Doc. #33, *PageID* #230). Moreover, Defendants argue that Plaintiff's request for an injunction "is only related to the subject matter of his Complaint to the extent that his safety is at further risk while housed in protective custody." *Id.* However, Defendants note that Plaintiff does not allege that Gibson was returned to Plaintiff's cell or whether he has a cellmate at all. *Id.* at 231. Additionally, Defendants assert that Plaintiff does not explain how or why his safety is now at greater risk than when he checked himself into protective custody. *Id.* Finally, Defendants contend that interference by the federal courts in the administration of state prison matters is disruptive and against the public interest. *Id.* at 231.

## II. STANDARD OF REVIEW

Rule 65 of the Federal Rules of Civil Procedure permits a party to a lawsuit to seek injunctive relief if he believes that he will suffer irreparable harm or injury while the suit is pending. Temporary restraining orders (TRO) and preliminary injunctions are extraordinary remedies "which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban Co. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *PUI Audio Inc. v. Van Den Broek*, No. 3:21-cv-284, 2021 WL 4905461, at *3 (S.D. Ohio Oct. 21, 2021); *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F. Supp. 2d

4

853, 860 (S.D. Ohio 2008) (A TRO "should only be granted if the movant can clearly show the need for one.").

In determining whether to issue a TRO or preliminary injunction, this Court must balance the following factors:

1. Whether the party seeking the injunction has shown a "strong" likelihood of success on the merits;
2. Whether the party seeking the injunction will suffer irreparable harm absent the injunction;
3. Whether an injunction will cause others to suffer substantial harm; and
4. Whether the public interest would be served by a preliminary injunction.

*Leary v. Daeschner,* 228 F.3d 729, 736 (6th Cir. 2000); *Overstreet*, 305 F.3d at 573; *Northeast Ohio Coal. for Homeless & Serv. Emps. Int'l Union v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). The four factors are not prerequisites but must be balanced as part of a decision to grant or deny injunctive relief. *Leary*, 228 F.3d at 736. Further, "a district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue." *Jones v. City of Monroe,* 341 F.3d 474, 476 (6th Cir. 2003)*, abrogated on other grounds by Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015).

"The purpose of a preliminary injunction is to preserve the status quo until a trial on the merits." *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 848-49 (6th Cir. 2017) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). When a prisoner requests an order enjoining a state prison official, the Court must "proceed with caution and due deference to the unique nature of the prison setting." *White v. Corr. Med. Servs.*, No. 1:08-cv-277, 2009 WL 529082, at *2 (W.D. Mich. Mar. 2, 2009) (citing *Kendrick v. Bland*, 740 F.2d 432, 438 n. 3 (6th Cir. 1984); *Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir. 1995)). In deciding if a preliminary

5

injunction is warranted, the Court must "weigh carefully the interests on both sides." *Lang v. Thompson*, No. 5:10-cv-379-HRW, 2010 WL 4962933, at *4 (E.D. Ky. Nov. 30, 2010) (citing *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975)). A preliminary injunction is an extraordinary remedy that should only be granted "upon a clear showing that the plaintiff is entitled to such relief." *S. Glazer's Distributors of Ohio, LLC*, 860 F.3d at 849 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)); *see also Overstreet*, 305 F.3d at 573.

### III. DISCUSSION

Plaintiff has not alleged facts sufficient to warrant the extraordinary remedy of a preliminary injunction in this case. *See ACLU of Michigan v. Livingston Cnty.*, 796 F.3d 636, 642 (6th Cir. 2015) ("[T]he party seeking a preliminary injunction bears the burden of justifying such relief.") (quoting *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012)). Plaintiff has made no attempt to apply the above factors that must be weighed to his situation. Further, he has not presented any evidence showing either a substantial likelihood of success on the merits of his claims or demonstrating that he will suffer irreparable harm absent a preliminary injunction. *See Leary*, 228 F.3d at 739 ("[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion."); *Bates v. Hale*, 2023 WL 4699892, at *3 (S.D. Ohio 2023), *report & recommendation adopted*, 2023 WL 5278681 (S.D. Ohio 2023) (citing *Glover v. Johnson,* 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland,* 740 F.2d 432, 438 n. 3 (6th Cir. 1984)) ("When an injunction is sought by an inmate against state prison officials, the Sixth Circuit has noted that findings of fact in support of any granted relief are "especially critical" since such an order would necessarily intrude "significantly into the prerogatives of state correctional officials.").

Although Plaintiff alleges another inmate informed him that his boss had a "hit" on him, Plaintiff does not identify the inmate or how he knew that the inmate worked for the Chaplin's Department. Furthermore, while Plaintiff believes the timing of Gibson's placement in his cell is suspect, Plaintiff does not allege that Defendants in this case has a role in Gibson's placement—or that they were involved in any way in Gibson's attack on Plaintiff. Similarly, although Plaintiff alleges that he believes his food has been spit in, he provides no evidence in support of his claim.

Moreover, an injunction is not warranted here because the purpose of a preliminary injunction—to preserve the status quo until a trial on the merits can be held, *see S. Milk Sales, Inc. v. Martin*, 924 F.2d 98, 102 (6th Cir. 1991)—would not be served. Plaintiff does not seek to preserve the status quo. He instead asks to be transferred to a federal holding facility. Such request does not preserve the status quo of the parties and does serve the purpose of a preliminary injunction.

In sum, because Plaintiff has failed to meet his burden to secure the requested injunctive relief, the undersigned **RECOMMENDS** that Plaintiff's Motion for Injunctive Relief (Doc. #30) be **DENIED**. *See ACLU of Michigan v. Livingston Cnty.*, 796 F.3d 636, 642 (6th Cir. 2015) (quoting *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012)) ("[T]he party seeking a preliminary injunction bears the burden of justifying such relief.").

**IT IS THEREFORE RECOMMENDED THAT:**

Plaintiff's Motion for Injunctive Relief (Doc. #30) be **DENIED**.

December 18, 2025

s/*Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Crim. P. 59(b)(2), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).